IN THE FEDERAL DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN

| | | |
|---|---|---|
| SANTANA CLINE | ) | |
| | ) | CASE NO: _____ |
| | ) | |
| **Plaintiff,** | ) | **Judge:** |
| | ) | |
| v. | ) | **17CV3653** |
| | ) | |
| HSBC BANK USA, | ) | DEMAND FOR JURY TRIAL |
| NATIONAL ASSOCIATION | ) | |
| 452 FIFTH AVE | ) | |
| NEW YORK, NEW YORK 10018 | ) | |

RECEIVED
SDNY DOCKET UNIT
2017 MAY 15  PM 3: 54

**COMPLAINT FOR:  BREACH OF
CONTRACT, BREACH OF COVENANT
OF GOOD FAITH AND FAIR DEALING,
CONVERSION, INVASION OF
PRIVACY, MISAPPROPRIATION,
INTRUSION**

REISENFELD & ASSOCIATES
3962 RED BANK ROAD
CINCINNATI, OHIO 45227

CHRISTOPHER DAWSON
1212 BATH AVE
SUITE 535
ASHLAND, KENTUCKY 41101

**Defendants,**

Plaintiff, Santana Cline ("Ms. Cline"), hereby file the foregoing complaint against Defendants

HSBC Bank USA National Association ("HSBC"), Reisenfeld & Associates ("Reisenfeld") and

Christopher Dawson ("Dawson") collectively as ("Defendants") and allege as follows:

**NATURE OF THE CASE**

1. This case is simple. Defendants have taken advantage of their positions as a bank and law firm to

make unauthorized forged promissory notes baring Ms. Cline's name for a prior, cancelled debt. Defendant's, collectively, are attempting to defraud the Plaintiff of $433,500 and trying to subject them to litigation of third parties. Defendant's are attempting to use a promissory note against an un-named party, Timothy Hugh Dials, in a West Virginia Bankruptcy Court, case 6:16-60085 (Judge Volk) and are seeking to obtain the property originally secured by the cancelled note by using a new, elaborate fabrication. Instead of dropping their claims and lien on the subject property, 8243 Chippenham Drive, Dublin, Ohio 43016, the Defendant's have persisted to forge the Plaintiff's personal identifiers including their name - prior loan number - and signature on a negotiable instrument. Defendant's should be made accountable for their identity theft.

## THE PARTIES

2. Plaintiff Santana Cline is an individual who resides in Powell, Ohio and does business out of Las Vegas, Nevada.

3. Defendant HSBC Bank USA National Association is a bank with its principal place of business in the County of New York.

4. Defendant  Reisenfeld & Associates is a law firm that has their principal place of business in Cincinnati, Ohio - and routinely works as a debt collection company.

5. Defendant Christopher Dawson is an attorney who works for Defendant Reisenfeld out of Ashland, Kentucky and upon information and belief does business in Kentucky, Ohio, West Virginia and elsewhere.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff's are citizens and residents of the State of Ohio. Plaintiffs are informed and believe, and

thereon allege, that the main Defendant,HSBC, principal place of business as a trust company is in New York, New York. The amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because all of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## RELEVANT FACTS

8. In 2006 Ms. Cline purchased a property in Ohio, 8243 Chippenham Drive, Dublin, Ohio 43016, from CBSK d.b.a American Home Loans. ("CBSK") The original loan company was out of business in November 2005, nearly six months before Ms. Cline procured a loan from their company. Due to their defunct status in 2006, Ocwen Loan Servicing assigned Ms. Cline's loan to an HSBC trust, purported to be the 2006-ASAP3 trust for Ace Securities and sought to claim the loan as a 'default' in 2007, seeking a foreclosure judgment in the Franklin County Common Pleas Court with a 'lost note affidavit'.

9. During the proceeding decade no less than seven different notes have been presented throughout the procedural history of the litigation instigated by Ocwen Loan Servicing using the name of HSBC. The notes, which varied in size, writing, coloring, etc. never bore any blue ink signatures nor endorsement from CBSK during the decades long history.

10. In August 2015, another fabrication of a note was presented to the Plaintiff and Ms.Cline sought to file a criminal complaint with local law enforcement. Sometime in late January 2016 the Plaintiff was informed that Ocwen was closing her loan file. In March 2016 her actual, blue ink, promissory note appeared and was marked as 'CANCELED' in red on the top of the document.

11. After years of mental anguish, stress and psychological abuse from the lost wages, hours and enjoyment of life from dealing with the harassing nature of the litigation under HSBC's direction, the

Plaintiff assigned the property via Quit Claim Deed to her step-father two weeks after receiving the returned note so that she could begin a fresh start with the intellectual property she traded for value for the property. After hoping to be free to begin a new business and explore further IP rights with her newly acquired items, she was once again brought back into the mix of HSBC's deceit when Dawson, through Reisenfeld, filed to take the property from her step-father, Timothy Dials using a scheme that has resulted in them creating another promissory note, signing the Plaintiff's name and forging a transfer stamp on a note 11 years later, and more than a year after the cancellation of the actual note.

12. The Plaintiff is now subject to being exposed to a lawsuit for the transfer of property due to their unlawful use of Plaintiff's identity, she is also subject to the property being taken in her name and liability and judgment be attached to her, as well as further loss of income and mental well-being from the continued harassment and fraud by the named Defendants.

13. To make this more damning to the Plaintiff, Defendants are knowingly doing this scheme after being presented with proof of the cancelled document, as well as being subject to numerous Court actions - many filed in New York State Court, that clearly identified the properties - or lack thereof, in the trust at issue and it did not include Ms. Cline's former residence. *HSBC*, in case No. 131869AJNGWG, 650327/2013, Royal Park Case 652732/2013, *Dials vs Ace Securities*, 670291/2016, and their removal by shareholders via Gibbs Burn in 2015. The Defendants, namely Reisenfeld, have a history of filing fraudulent actions for cancelled debt as well, as noted in *Elliott vs JP Morgan*, 30C01-0607-MF-570.

14. In furtherance of their identity theft and forgery of Ms. Cline's signature, Defendant's also forged the signature of Brent McElwee of CBSK d.b.a American Home Loans on a newly created transfer stamp, in which they ironically mis-spelled the companies name and signed the document "Cool" or "Coop" depending on your reading of the last letter of the signature block.

15. Because of this newly devised scheme, Ms. Cline has agreed to her signature to be reviewed by a handwriting expert and had the newly created document analyzed by a forensic group, Ghiro Imaging Labs. They concluded the document was made in Adobe Photoshop 2.0 & 3.0 and that the signatures do not match Ms. Cline's signature nor any publicly available Brent McElwee signature.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

Plaintiffs re-allege and incorporate as if fully set forth herein the allegations of Paragraphs 1-15 above.

On or about March 4th, 2016 Defendant HSBC had the underlying promissory note cancelled and returned on their behalf by Ocwen Loan Servicing to Ms. Cline.

Plaintiff has fully performed all conditions, covenants, obligations and terms in relation to the underlying note and was exhausted of all claims against her and her former residence when the note was returned to her in 2016.

Defendants have failed and refused to cease action on the cancelled contract. They have failed to cure their violations of the cancellation, including their obligation to release the underlying mortgages.

Defendant's wrongful conduct alleged herein constitutes a breach of the promissory note and contract.

As a direct and proximate result of Defendant's conduct, Plaintiff's have suffered and will continue to suffer damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

Plaintiffs re-allege and incorporate as if fully set forth herein the allegations of Paragraphs 1-15 above.

Defendant breached the implied covenant of good faith and fair dealing by acting in bad faith and with a motive to intentionally frustrate Plaintiffs' enjoyment of their rights under the cancelled promissory note. Specifically they have forged another document to attempt to collect money in her name from another and is a clear effort to frustrate Plaintiff's ability to move on from this loan and be made whole.

As a direct and proximate result of Defendant's conduct, Plaintiff's have suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Conversion)

Plaintiffs re-allege and incorporate as if fully set forth herein the allegations of Paragraphs 1-15 above.

At all times relevant herein, Plaintiff had clear ownership and rights of possession to Ms. Cline's property - including the cancelled promissory note. Defendant's wrongfully appropriated Plaintiff's property by forcefully keeping a lien on her prior residence under her name and attempted to revive a cancelled debt with a forgery in the amount of $433, 500.

As a direct and proximate result of Defendant's conduct, Plaintiff's have suffered and will continue to suffer damages in an amount to be determined at trial, but in any event in excess of $945,000.00

The aforementioned acts of Defendant were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud and justify the award of exemplary and punitive damages against Defendant.

## FOURTH CAUSE OF ACTION

### (Invasion of Privacy —Misappropriation)

Plaintiffs re-allege and incorporate as if fully set forth herein the allegations of Paragraphs 1-15 above.

At all times relevant herein, Ms. Cline has maintained a legally protected privacy interest in her name, signature, likeness, including protection against unauthorized use and/or appropriation of Ms. Cline's name for a wrongful purpose or to gain an unfair advantage or reward.

Defendants knew or should have known that Ms. Cline had a reasonable expectation of privacy in her name and/or likeness, including protection against unauthorized use and.or appropriation of Ms. Cline's name for a wrongful purpose or to gain an unfair advantage.

Defendants intentionally and/or negligently violated Ms. Cline's right of privacy by appropriating Ms. Cline's name, posing as Ms. Cline, and or signing Ms. Cline's signature in connection with Defendant's unauthorized creation of a promissory note, on which Defendant's are not an authorized signatory and/or have any rights to act on her behalf.

As a direct and proximate result of Defendant's invasion of Ms. Cline's rights of privacy alleged herein, Ms. Cline has suffered substantial damages in excess of $75,000 to be proven at trial.

In doing the acts alleged herein, Defendants acted with oppression, fraud or malice, in conscious disregard for Ms. Cline's rights and the purpose and with the intent of harming Ms. Cline, so as to entitle Ms. Cline to exemplary or punitive damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

## (Invasion of Privacy —Intrusion)

Plaintiffs re-allege and incorporate as if fully set forth herein the allegations of Paragraphs 1-15 above.

At all times relevant herein, Ms. Cline has maintained a legally protected interest in her private matters and affairs, including protection against unauthorized intrusion into Ms. Cline's confidential personal information, social security number, loan accounts and business information.

Defendants knew or should have known Ms. Cline had a reasonable expectation of privacy in her private affairs, including protection against unauthorized intrusion into Ms. Cline's confidential business accounts, personal information, credit information and other.

Defendant's intentionally and/or negligently violated Ms. Cline's right to privacy by secretly and unlawfully accessing her credit report and creating loan accounts in order to attempt to collect debt in her against against third parties, namely Timothy Dials.

As a direct and proximate result of Defendant's invasion of Ms. Cline's right to privacy as alleged herein, Ms. Cline has suffered substantial damages in excess of $75,000 according to proof at trial.

In doing the acts alleged herein, Defendants acted with oppression, fraud or malice, in conscious disregard for Ms. Cline's rights and the purpose and with the intent of harming Ms. Cline, so as to entitle Ms. Cline to exemplary or punitive damages in an amount according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request a judgment against the Defendants as follows:

1. Compensatory damages for Defendant's invasion of Ms. Cline's right of privacy in an

mount in excess of $75,000 to be proven at trial

2. For destruction of the forged promissory note and removal of all liens and claims obtained by Defendant's using Plaintiff's identity without permission

3. For exemplary or punitive damages in an amount to be proven at trial

4. For injunctive relief against the Defendant's from accessing and using Plaintiff's information and identity

5. An award of costs for any associated fees with this litigation

and

6. For such other and further relief as the Court deems just and proper.

**MAY 10TH, 2017**

Respectfully submitted,

Santana Jade Cline, *pro se*

PO BOX 1313

Powell, Ohio 43065

203-514-0373

MIN: 1001446-0009744791-8                          Loan Number: 9744791

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 5, 2006                  SANTA ANA                 CALIFORNIA
[Date]                              [City]                                  [State]

8243 CHIPPENHAM DRIVE, DUBLIN, OHIO 43016
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $433,200.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION . I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     8.750 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month. I will pay principal and interest by making a payment every month. I will make my monthly payment on the 1st day of each month beginning on JUNE 1 , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  6 HUTTON CENTRE DR. 7TH FLOOR, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $3,407.99 . This amount may change. ** See attached Interest Only Note Addendum.

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                    Page 1 of 5

DocMagic eForms  800-649-1362
www.docmagic.com

Us55201.not.1.tem

Exhibit A

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the 1st    day of MAY, 2008                  , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 000/1000                             percentage point(s) (    5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than    11.750 % or less than    8.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                    percentage point(s) (    1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than    14.750 %. My interest rate will never be less than    8.750 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY   ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                         Page 2 of 5

*DocMagic* *eFeatures* 800-649-1362
*www.docmagic.com*

Us5520.not.2.tem

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                    Page 3 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us55205.not.3.tem

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                     Page 4 of 5

DocMagic eForms  800-649-1362
www.docmagic.com

Ls55204.not.4.tem

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
SANTANA CLINE        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                              -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                        Page 5 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

U:s55205.not.5.tem

Loan Number: 9744791

# INTEREST ONLY PAYMENT PERIOD NOTE ADDENDUM

**THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE PROVISIONS IN THE NOTE ALLOWING FOR CHANGES IN THE INTEREST RATE APPLY DURING THE INTEREST ONLY PERIOD.**

This Interest Only Payment Period Note Addendum is made this 5th day of APRIL , 2006 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

8243 CHIPPENHAM DRIVE, DUBLIN, OHIO 43016

**ADDITIONAL COVENANTS.** Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

I.    Sections 3 and 4 of the Note are modified to provide for sixty (60) payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note.  Sections 3 and 4 of the Note are modified as follows:

## 3.   PAYMENTS
**(A) Time and Place of Payments**
I will pay interest during the Interest Only Period, and principal and interest thereafter, by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on JUNE , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MAY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 6 HUTTON CENTRE DR. 7TH FLOOR, SANTA ANA, CALIFORNIA 92707 or at a different place if required by the Note Holder.

**(B) Amount of My Interest Only Payments**
The first SIXTY ( 60 ) monthly payments will be in the amount of U.S. $ 3,158.75 , which equals one twelfth (1/12) of the amount of yearly interest due on the principal at the initial interest rate stated in Section 2 of this Note. The next THREE HUNDRED ( 300 ) monthly payments will equal one twelfth (1/12) of the amount of yearly interest due on the principal at the rate determined in accordance with Section 4 of the Note. These sixty (60) payments are called the "Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of this Note, as modified by a Prepayment Addendum, if any.



loann1.ff.1.tem

**(C) Monthly Payment Changes**

During the Interest Only Period, changes in my monthly payment will reflect changes in the interest rate that I must pay. After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st    day of MAY, 2008                 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average on interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  FIVE  AND 000/1000                     percentage point(s) (      5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Before each Change Date during the Interest Only Period, the Note Holder will determine the amount of my monthly payment by calculating one twelfth (1/12) of the amount of yearly interest due at my new interest rate. Before the Change Date immediately prior to the due date of the sixty first (61st) payment and before each subsequent Change Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       11.750 % or less than      8.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  AND  000/1000                         percentage point(s) (      1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than      14.750  % nor less than       8.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

II.   All other provisions of the Note and any Addenda are unchanged by this Interest Only Payment Period Note Addendum and remain in full force and effect.

INTEREST ONLY PAYMENT PERIOD NOTE ADDENDUM
02/01/05                                                  Page 2 of 3                          *DocMagic eForms* 800-649-1362
                                                                                                     *www.docmagic.com*



loatn2.ff.2.tem

By signing below, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Note Addendum.


_____ (Seal)                    _____ (Seal)
SANTANA CLINE                   -Borrower                                                  -Borrower


_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower


_____ (Seal)                    _____ (Seal)
                                -Borrower                                                  -Borrower

Ioatn3.ff.3.tem

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 9744791

Date: APRIL 5, 2006

Borrower(s): SANTANA CLINE

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 5th day of APRIL, 2006 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION ("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment, I will pay a Prepayment charge in an amount equal to ONE percent ( 1.000 %) of the original Principal amount of the residential mortgage.

DocMagic *eForms* 800-649-1362
www.docmagic.com



Obpatna1.ppf.1.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____    _____
Borrower SANTANA CLINE            Date       Borrower                          Date


_____    _____
Borrower                          Date       Borrower                          Date


_____    _____
Borrower                          Date       Borrower                          Date

OHIO PREPAYMENT ADDENDUM TO NOTE -
FIRST LIEN/JUNIOR LIEN OPTION A
6/03                              Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ohpstna2.ppf.2.tem

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT PARKERSBURG DIVISION

In Re: | CASE NO. 16-60085

TIMOTHY HUGH DIALS | Chapter 13

Debtor | Judge Frank W. Volk

### NOTICE OF FILING

COMES NOW, the Creditor, HSBC Bank USA, N.A., as Trustee on behalf of ACE

Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp.

Home Equity Loan Trust, Series 2006-ASAP3, Asset Backed Pass-Through Certificates

(hereinafter "HSBC"), and hereby gives notice of the filing of a copy of the original "wet ink"

Promissory Note attached hereto. The Mortgage Identification Number ("MIN") located at the

top left corner of Page 1 of 5 of the Note has been redacted because it contains the borrower's

loan account number, which has also been redacted in the three (3) locations it appears. Finally,

on the top right corner of Page 1 of 5 of the Note, handwritten numbers that might identify

borrower's personal information have been redacted.

HSBC's counsel is in possession of the original Note on behalf of the Plaintiff.

Respectfully Submitted

/s/ Christopher A. Dawson
Christopher A. Dawson (10633)
Reisenfeld & Associates, LPA LLC
Attorney for Creditor
3962 Red Bank Road
Cincinnati, OH 45227
Voice: (304) 853-3338
Facsimile: (304) 853-3338
christopher.dawson@rslegal.com

Exhibit B

## CERTIFICATE OF SERVICE

I certify that on the 10th day of April, 2017, a true and correct copy of the foregoing was served:

**Via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:**

Helen M. Morris, Bankruptcy Trustee
ch13trustee@wvtrustee.org

U.S. Trustee
(Registered Address)@usdoj.gov

**And by regular U.S. Mail, postage prepaid on:**

Timothy Hugh Dials, Debtor
8243 Chippenham Dr.
Dublin, OH 43016

/s/ Christopher A. Dawson
Christopher A. Dawson (10633)

Case 6:16-bk-60085   Doc 178-1   Filed 04/10/17   Entered 04 ▉▉▉▉
Exhibit A - Note   Page 1 of 11

MIN: ▉▉▉▉▉▉▉▉  Loan Number: ▉▉▉▉▉

# ADJUSTABLE RATE NOTE
## (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 5, 2006          SANTA ANA          CALIFORNIA
[Date]                 [City]             [State]

8243 CHIPPENHAM DRIVE, DUBLIN, OHIO 43016
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $433,200.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION          . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          8.750 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st   day of each month beginning on JUNE 1 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  6 HUTTON CENTRE DR. 7TH FLOOR, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $3,407.99          . This amount may change. **\*\* See attached Interest Only Note Addendum.**

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04          Page 1 of 5

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us5201.not.1.tem

EXHIBIT A

**(C)  Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**

The interest rate I will pay may change on the 1st   day of MAY, 2008                   , and may change on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  FIVE AND 000/1000           percentage point(s) (     5.000 %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than      11.750 % or less than      8.750 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 000/1000                 percentage point(s) (     1.000 %) from the rate of interest I have been paying for the preceding six months.  My interest rate will never be greater than      14.750 %.  My interest rate  will  never  be  less  than     8.750 %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY   ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                    Page 2 of 5

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Us5202.not.2.tem

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

---

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                  Page 3 of 5

*DocMagic* **eForms** 800-649-1362
**www.docmagic.com**

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                                    Page 4 of 5

DocMagic *eForms*  800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)      _____ (Seal)
SANTANA CLINE                    -Borrower                                    -Borrower


_____ (Seal)      _____ (Seal)
                                 -Borrower                                    -Borrower


_____ (Seal)      _____ (Seal)
                                 -Borrower                                    -Borrower


*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index                    *DocMagic eForms* 800-649-1362
(Assumable During Life of Loan) (First Business Day Lookback)            *www.docmagic.com*
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                              Page 5 of 5

U=55205.not.5.tem

PAY TO THE ORDER OF

WITHOUT RECOURSE:
CBSK FINANCIAL GROUP, INC.
DBA AMERICA HOME LOANS
A CALIFORNIA CORPORATION

BRENT MCELWEE
PRESIDENT

Loan Number: ████████

# INTEREST ONLY PAYMENT PERIOD NOTE ADDENDUM

**THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST. THE PROVISIONS IN THE NOTE ALLOWING FOR CHANGES IN THE INTEREST RATE APPLY DURING THE INTEREST ONLY PERIOD.**

This Interest Only Payment Period Note Addendum is made this 5th day of APRIL , 2006 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:
8243 CHIPPENHAM DRIVE, DUBLIN, OHIO 43016

**ADDITIONAL COVENANTS.** Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

I.    Sections 3 and 4 of the Note are modified to provide for sixty (60) payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note. Sections 3 and 4 of the Note are modified as follows:

## 3.   PAYMENTS
### (A) Time and Place of Payments
I will pay interest during the Interest Only Period, and principal and interest thereafter, by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on JUNE , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MAY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 6 HUTTON CENTRE DR. 7TH FLOOR, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

### (B) Amount of My Interest Only Payments
The first SIXTY ( 60 ) monthly payments will be in the amount of U.S. $ 3,158.75 , which equals one twelfth (1/12) of the amount of yearly interest due on the principal at the initial interest rate stated in Section 2 of this Note. The next THREE HUNDRED ( 300 ) monthly payments will equal one twelfth (1/12) of the amount of yearly interest due on the principal at the rate determined in accordance with Section 4 of the Note. These sixty (60) payments are called the "Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of this Note, as modified by a Prepayment Addendum, if any.



**(C) Monthly Payment Changes**

During the Interest Only Period, changes in my monthly payment will reflect changes in the interest rate that I must pay. After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st   day of MAY, 2008                     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average on interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  FIVE AND 000/1000                                      percentage point(s) (     5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Before each Change Date during the Interest Only Period, the Note Holder will determine the amount of my monthly payment by calculating one twelfth (1/12) of the amount of yearly interest due at my new interest rate. Before the Change Date immediately prior to the due date of the sixty first (61st) payment and before each subsequent Change Date, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     11.750 % or less than     8.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                                      percentage point(s) (     1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than     14.750  % nor less than       8.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

II.  All other provisions of the Note and any Addenda are unchanged by this Interest Only Payment Period Note Addendum and remain in full force and effect.

*DocMagic eForms* 800-649-1362
*www.docmagic.com*



loatn2.tf.2 tem

By signing below, Borrower accepts and agrees to the terms and conditions contained in the Interest Only
Payment Period Note Addendum.


_____ (Seal)          _____ (Seal)
SANTANA CLINE                   -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower


INTEREST ONLY PAYMENT PERIOD NOTE ADDENDUM
02/01/05                              Page 3 of 3                      *DocMagic eForms* 800-649-1362
                                                                      www.docmagic.com

loatn3.ff.3.tem

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: █████████

Date: APRIL 5, 2006

Borrower(s): SANTANA CLINE

      THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this   5th   day of APRIL, 2006          , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION ("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

      ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

      Section  5       of the Note is amended to read in its entirety as follows:

**5  . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
      I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
      The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
      If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.
      If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment, I will pay a Prepayment charge in an amount equal to ONE        percent (   1.000 %) of the original Principal amount of the residential mortgage.

OHIO PREPAYMENT ADDENDUM TO NOTE -
FIRST LIEN/JUNIOR LIEN OPTION A
6/03                    Page 1 of 2           *DocMagic eForms* 800-649-1362
*www.docmagic.com*

Ohpnua1.ppf.1.tem



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.


_Santana Cline_     _4/5/06_      _____
Borrower SANTANA CLINE          Date      Borrower                                Date


_____          _____
Borrower                                Date      Borrower                                Date


_____          _____
Borrower                                Date      Borrower                                Date


OHIO PREPAYMENT ADDENDUM TO NOTE -
FIRST LIEN/JUNIOR LIEN OPTION A
6/03                                    Page 2 of 2

Ohpatno2.ppf.2.tem

PAY TO THE ORDER OF:

IMPAC FUNDING CORPORATION·

WITHOUT RECOURSE:
CBSK FINANCIAL GROUP, INC.,
DBA AMERICAN HOME LOANS
A CALIFORNIA CORPORATION

BRENT MCELWEE
PRESIDENT

Exhibit C

4/15/2017      Case 6:16-bk-60085     Doc 184-5     Filed 04/19/17 .jpg Entered 04/19/17 10:20:05     Desc
Exhibit E     Page 1 of 5

VOL 0008 PAGE 1684

**FILED IN CHARLESTON
U.S. BANKRUPTCY COURT**

199900036994
Filed for Record in
DELAWARE COUNTY, OHIO
KAY E. CONKLIN
On 11-05-1999 At 01:01 pm.
MTG ASSIGN      16.00
OR book    8 Page 1684 - 1684

APR 18 2017

**SOUTHERN DISTRICT
WEST VIRGINIA**

Recording Requested By: CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS 4 HUTTON
CENTRE DRIVE, 9TH FLOOR SANTA ANA CA 92707
Return To: CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS 4 HUTTON CENTRE DRIVE,
9TH FLOOR SANTA ANA CA 92707

LOAN NO.:   9702836
ORDER NO.:   99-1585-45
ESCROW NO.:   99-1585-45

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
4 HUTTON CENTRE DRIVE, 9TH FLOOR, SANTA ANA, CA 92707
does hereby grant, sell, assign, transfer and convey, unto
CRESTAR MORTGAGE CORP.

, a corporation organized and

existing under the laws of Virginia                                    (herein "Assignee"), whose address is
901 Semmes Ave., Richmond, VA 23224
a certain Mortgage , dated APRIL 30, 1999                              , made and executed by
RAOUF M. DANIEL AND NAGWA A. DANIEL

to and in favor of
CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS

upon the following described property situated in

DELAWARE          County, State of OHIO
BEING LOT NUMBER SIX HUNDRED THIRTY SEVEN (637) OF ALUM ESTATES, AS THE SAME IS NUMBERED AND
DELINEATED UPON THE RECORDED PLAT THERE, OF THE IN PLAT CABINET 1, SLIDE 503, RECORDER'S
OFFICE, DELAWARE COUNTY, OHIO, TOGETHER WITH A COMMON ACCESS DRIVE TO BE USED FOR INGRESS AND
EGRESS AS SHOWN IN PLAT CABINET 1, SLIDE 503, RECORDER'S OFFICE, DELWARE COUNTY, OHIO.

PARCEL NO.:  05-418-120-01-036-00          such Mortgage having been given to secure payment of
TWO HUNDRED SIX THOUSAND AND 00/100X X X X X X X X X X X X X X X X X X X X X X X X X X X
($ 206,000.00     )              (Include the Original Principal Amount)
which Mortgage is of record in Book, Volume, or Liber No. OR8     , at page  1677      (or as
No.        ) of the          Records of             County,
State of          together with the note(s) and obligations therein described, the money due
and to become due thereon with interest, an all rights accrued or to accrue under such Mortgage.
TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to
the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

CBSK    FINANCIAL    GROUP,    INC.,    DBA
AMERICAN HOME LOANS

(Assignor)

By:        (Signature)
Brent McElwee  President

Witness

Atten Dori Kay, Assist. Secretary
Seal

This Instrument Prepared By: Colleen Paramo          , address:
4 Hutton Centre Dr,9th Fl.,Santa Ana,CA 92707 , tel. no.:714-825-8500
Commonwealth/State of California
County of  Orange
The foregoing instrument was acknowledged before me this November 4, 1999
by Brent McElwee
CBSK Financial Group, Inc. dba
, of American Home Loans
, a California
corporation, on behalf of the said corporation.

Camby Caracoza, Notary Public

FNMA Multistate1 Assignment of Mortgage     6/96
L55I FNMAMTG3.COR (06/97) VMP-995M1L (9606)

CAMBY CARACOZA
Commission # 1225407
Notary Public - California
Orange County
My Comm. Expires Jun 20, 2003

5

E

**SERVICE MARK
DOCKET NO. 224/296**

believes applicant to be entitled to use such mark in commerce;
to the best of his/her knowledge and belief no other person,
firm, corporation, or association has the right to use the above
identified trademark/servicemark in commerce, either in the
identical form thereof or in such near resemblance thereto as to
be likely, when used on or in connection with the goods/services
of such other person, to cause confusion, or to cause mistake, or
to deceive; and that all statements made of his/her own knowledge
are true and all statements made on information and belief are
believed to be true.

Please mail all correspondence to Lyon & Lyon, attention:
David A. Randall at the address noted above, and direct all
telephone calls to **David A. Randall** at **(213) 489-1600.**

CBSK FINANCIAL GROUP, INC.
d/b/a American Home Loans

Dated: _MAY 17_, 1997  By _____
Brent McElwee
Title: President
CBSK FINANCIAL GROUP, INC.

4

After Recording Return to:
Mortgage Resource Network
16610 Dallas Parkway Suite 2300
Dallas, TX 75248-2685
1-866-248-9011

| Order No. | OH<br>Franklin | Mine | Mers Phone | Assignor # | Investor # | Assignee # |
|-----------|----------------|------|------------|------------|------------|------------|
| Escrow No. | | | 1-888-679-6377 | 1678005273 | 1678005273 | 3152496 |
| Application No. | | 100070116780052731 | | | | |
| Loan No. 9709740 | | | | | | |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Mortgage

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged,
CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A CALIFORNIA
CORPORATION                          Mortgage Electronic                       ("Assignor"),
does hereby sell, assign, transfer and set over unto   Registration Systems, Inc.
                                        P.O. Box 2026, Flint, MI 48501-2026
                                                                              ("Assignee"),
all of Assignor's right, title and interest in and to that certain Open-end Mortgage dated JUNE 26, 2001 ,
                     , delivered to Assignor by LINDA KLEIN AND CAL KLEIN AS JOINT
TENANTS
and recorded concurrently herewith in Volume 200107003015404 , Page 7-3-01 of the Official Records in
the County Recorder's office of        FRANKLIN       County, OHIO
describing land therein as:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

                                                                              ("Assignee").
TOGETHER with the note or notes therein described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, Assignor has executed this instrument as of the       11TH       day of
     JULY              2001 ,          CBSK FINANCIAL GROUP, INC.,
                                        DBA AMERICAN HOME LOANS, A
DATE  7/11/2001                         CALIFORNIA CORPORATION
STATE OF CALIFORNIA
COUNTY OF ORANGE
BEFORE ME, THE UNDERSIGNED                    a
Notary Public in and for said County and State, personally appeared
BRENT MCELWEE , PRESIDENT              BRENT MCELWEE, PRESIDENT



of Assignor, who acknowledged that he/she did sign the foregoing
instrument on behalf of Assignor.
IN WITNESS WHEREOF, I have set my hand and official seal at

this  11TH    day of  JULY         Signed and acknowledged in the presence of:
2001 ,                               MEGAN CAHALAN
                                     Witness  MEGAN CAHALAN
Signature
                 Notary Public
                                     Witness  MARY ARANDA
My commission expires:  5-20-05

                                     This instrument prepared by: MEGAN CAHALAN

This Document was Prepared by and                              (Seal)
After Recording, Return to:
Mortgage Resource Network            J. STONE
16610 Dallas Parkway Suite 2300      Comm. # 1305079
Dallas, TX 75248-2685                NOTARY PUBLIC-CALIFORNIA
1-866-248-9011                       Orange County
                                     My Comm. Expires May 20, 2005

**EXHIBIT C**

5.    The next day, February 6, 1997, I spoke with Yoshna about the threats. I was very upset that Sham made these threats and told Yoshna how disturbed I was by this. In this conversation, Yoshna said that Lori and I "will get what you deserve." I took this to mean that she was also threatening our lives.

6.    As a result of these threats, Lori Roman resigned from the company.

7.    Prior to receiving these threats I was informed by Dennis Vermeer and my receptionist, Sheila Bidwell, that Sham made other threats against my life and the lives of people in this company.

8.    Because of these threats, we have increased security measures at the office. Furthermore, my wife arms the alarm during the day and locks the doors at all times.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 3rd day of March, 1997 in Santa Ana, California.

_____
                        BRENT McELWEE

37075.1

TRADEMARK 224/296

I declare under penalty of perjury that the foregoing is true and correct.  I have been hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration.

Executed at Santa Ana, California, this _20_ day of January, 1999.

Brent McElwee
President
CBSK Financial Group, Inc., d/b/a
American Home Loans

**automated digital image forensics**

Exhibit D



## Image analysis: 784b2e675705e1650bc97f0432b296b8

## Dashboard

| Type | Result |
|---|---|
| Static analysis | Static data |
| EXIF metadata extraction | No EXIF metadata |
| IPTC metadata extraction | No IPTC metadata |
| XMP metadata extraction | No XMP metadata |
| Preview extraction from metadata | No Preview |
| Localization | No GPS data |
| Error Level Analysis (ELA) | Not applicable |
| Signature check | No signature match |

## Static Data

| Type | Value |
|---|---|
| Filename | Signatures1.jpg |
| Size | 174.0 KB |

| Analyzed at | May 7, 2017, 10:37 p.m. |

## Static Data - FileType

| Type |
| --- |
| JPEG image data, JFIF standard 1.01 |

## Static Data - Hashes

| Type | Value |
| --- | --- |
| SHA1 | d3c2ef20a286c9a9a4be7d1eda921cef6c3ba8e5 |
| SHA224 | 9089966d8430f8d46a0df27d2241b91539d30fd24cc0d329c9bd50a8 |
| SHA384 | 40b16a169991897d26404d9b427755fe65ac284ce16cd006dbb5c036d272ec27f934423e920d7bc0662d502d7f7b6427 |
| CRC32 | 501d75c3 |
| SHA256 | be8f1f3d4b2c588b8e5c295f493042113485940b9993b74965b195caf112dfa4 |
| SHA512 | 05dd6e627a8213f67ab6c9464b4a645a9e9a8ff83fb97046fc2f35fe683562034e2f4ad81f108e519437bccd6ed32a039849fad35997b7305ce541529a2cef8e |
| MD5 | 784b2e675705e1650bc97f0432b296b8 |

**automated digital image forensics**



**Image analysis: 7ef476dd7a33fd2e771ff57a2291e69a**

## Dashboard

| Type | Result |
|------|--------|
| Static analysis | Static data |
| EXIF metadata extraction | No EXIF metadata |
| IPTC metadata extraction | No IPTC metadata |
| XMP metadata extraction | No XMP metadata |
| Preview extraction from metadata | No Preview |
| Localization | No GPS data |
| Error Level Analysis (ELA) | Not applicable |
| Signature check | No signature match |

## Static Data

| Type | Value |
|------|-------|
| **Filename** | Signatures12.jpg |

| Size | 47.1 KB |
|---|---|
| Analyzed at | May 7, 2017, 10:37 p.m. |

## Static Data - FileType

| Type |
|---|
| JPEG image data, JFIF standard 1.01 |

## Static Data - Hashes

| Type | Value |
|---|---|
| SHA1 | 4fd72290d144722eacca0e819649154e475de4d0 |
| SHA224 | 95846adeb812555eaa2ecc8f0dedf2c08b85f06d4db64b0e1512a51b |
| SHA384 | 99851e24fa0de2e2914cfd0d266cf37808d61f26a2640b4c838ab6980c4d265691ac9ec127694978ff20fcd9bdf22544 |
| CRC32 | ec2e9e50 |
| SHA256 | fd86ec18b57eabf56e7d21feacd6fe04c40d03687867b00d05760b4e0831ac15 |
| SHA512 | 6f577cd614aaaafffc9f8467fccdd75edd059ef855da5ffb0e2eed889e58544b5fdd4761cc5f9a10b3b1e98e1d0deba7a04b973df43aa87f73bccd60d0a16683 |
| MD5 | 7ef476dd7a33fd2e771ff57a2291e69a |

FILED

2011 MAY -5  PM 3: 28

U.S. BANKRUPTCY COURT
COLUMBUS. OHIO

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO

IN RE: Santana J Cline

Case No. ___54893___

## VERIFICATION OF CREDITOR MATRIX

The above named Debtor hereby verifies that the attached list of creditors is true and correct to the best of my knowledge.

Date: ___S-S-2011___

_____
Debtor

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

### COLUMBUS/EASTERN DIVISION

FILED
JOHN P. HEHMAN
CLERK

2013 OCT -1  AM II: 35

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

|  |  |  |  |
|---|---|---|---|
| HSBC BANK USA N.A. | ) | CASE NO. | 2 : 1 3 C V 0 9 7 8 |
| **Plaintiff** | ) |  |  |
| **v.** | ) | Judge: | JUDGE SMITH |
| **SANTANA CLINE** | ) | MAGISTRATE JUDGE KEMP |  |
| **Defendant** | ) |  |  |
|  | ) |  |  |

### NOTICE OF REMOVAL

Defendant Santana Cline ("Cline"), respectfully notify the Court pursuant to 29 U.S.C 1441

that they have this day removed this action from the Court of Common Pleas of Franklin

County, Ohio to this Court. In support of this removal, removing Defendants submit this notice.

Removal is based on the grounds that diversity jurisdiction exists over this action because there

is a complete diversity between plaintiff and defendants and the amount in controversy exceeds

$75,000.

Respectfully submitted,

Santana Jade Cline, *pro se*

8243 Chippenham Drive

Dublin, Ohio 43016

1 of 5

Respectfully submitted,

Santana Jade Cline

8243 Chippenham Drive

Dublin, Ohio 43016

(614) 339-4409

*pro se*


## CERTIFICATE OF SERVICE


A true copy of the foregoing Notice of Removal was mailed on September 30th, 2013 by regular U.S. Mail, postage prepaid to:

Jillian Henzler
4805 Montgomery Road
Suite 320
Cincinnati, Ohio 45212

Bradley Sherman
Staff Counsel
140 E. Town St. Ste. 1015
Columbus, Ohio 43215

CBSK d.b.a. American Home Loans
6 Hutton Centre Drive
7th Floor
Santa Ana, California 92707


4 of 5

"attorney-in-fact" for HSBC Bank. The document was docketed on May 9th, 2012 after being

received on May 7th, 2012 by counsel in this case whom have repeatedly stated they cannot be

served c/o Ocwen.


Their actions in the state court, which were briefed in the reply filed by the Plaintiff, and

the newest affidavit raise questions to the nature and validity of their representation and show

that the Defendants in this case have numerous discrepancies amongst different courts.


For the above stated reasons, Plaintiff respectfully requests that the court incorporate the

additional exhibit into the record.


**Dated: May 14th, 2012**

                                                              Respectfully Submitted,

                                                    _____
                                                    Signature of Debtor/Plaintiff
                                                    Santana J. Cline, Pro Se
                                                    8243 Chippenham Drive
                                                    Dublin, Ohio 43016
                                                    1-614-339-4409


2 Of 3

**Dated: May 3rd, 2012**

Respectfully Submitted,

Signature of Debtor/Plaintiff

Santana J. Cline, Pro Se

8243 Chippenham Drive

Dublin, Ohio 43016

1-614-339-4409

8 Of 9

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Santana Cline_ _____ (Seal)          _____ (Seal)
SANTANA CLINE                    -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                          -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5520 3/04                          Page 5 of 5

**DocMagic** eFarms 800-649-1362
www.docmagic.com

2853205 not 5 tem

Exhibit E
(Forgery)

Official Form 417A (12/15)

Santana Cline
PO Box 13B
Pawe 11, OH 43065

United States Bankruptcy Court
District of Nevada

~~[Caption as in Form 416A, 416B, or 416D, as appropriate]~~   Case - 15-15412

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1   Name(s) of appellant(s):
    Santana Cline

2.   Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this
     appeal:

For appeals in an adversary proceeding.

☐ Plaintiff
☐ Defendant
☐ Other (describe) _____

For appeals in a bankruptcy case and not in an
adversary proceeding.

☒ Debtor
☐ Creditor
☐ Trustee
☐ Other (describe) _____

### Part 2: Identify the subject of this appeal

1.   Describe the judgment, order, or decree appealed from: Motion to Dismiss

2.   State the date on which the judgment, order, or decree was entered: 4-11-2016

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses,
and telephone numbers of their attorneys (attach additional pages if necessary):

1.   Party: US Trustee   Attorney: J. Michal Bloom
                                    300 Las Vegas Blvd
                                    suite 1300
                                    Las Vegas, NV 89001

2.   Party: _____   Attorney: _____
                                     _____
                                     _____
                                     _____

Exhibit F